# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00434-CV

---

**Wichita County, Texas, Appellant**

**v.**

**Environmental Engineering & Geotechnics, Inc., Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-18-001884, HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

## O P I N I O N

Wichita County, Texas filed this appeal challenging the district court's order directing the County to pay $11,283.89 to Environmental Engineering & Geotechnics, Inc. (EEG, a nonparty to the underlying suit) as "reasonable costs" for the production of documents in response to the County's subpoena. *See* Tex. R. Civ. P. 205.3(f). In two issues, the County challenges the district court's order: (1) refusing to permit the County to conduct discovery as to the reasonableness of EEG's costs, and (2) awarding EEG $11,283.89 "based upon the limited evidence presented" to the court at the hearing. For the reasons that follow, we will affirm the district court's order in part, reverse and render in part, and reverse and remand in part for further proceedings.

### BACKGROUND

In the underlying suit, the County sought civil penalties under the Texas Water Code against Southwest Convenience Stores (SCS), alleging that SCS was responsible for three leaking

underground storage tanks that polluted the groundwater in Wichita County for over nineteen years. *See* Tex. Water Code § 7.351. The State of Texas appeared in the suit as a "necessary and indispensable party" under the Water Code and aligned itself with the County as a party plaintiff, requesting a portion of all civil penalties awarded in the case. *See id*. §§ 7.353, .107. EEG was the environmental consultant for SCS between 1997 and 2016 and was involved with the "South Beverly Site" where the tanks were located. EEG was not a party to the County's suit.

The County served a subpoena on EEG requesting production of documents related to the South Beverly Site. EEG raised no objections to the County's requests. EEG responded to the subpoena by providing the County with electronic copies of documents in a DropBox folder. EEG also filed a motion for costs seeking to recoup costs associated with its document production and set the motion for hearing without conferring with the County in violation of the local rules.

At the start of the hearing, the County announced that it had not been consulted about the setting and that it was not ready to proceed if EEG intended to present witness testimony on the motion for costs. If EEG intended to present witnesses, the County requested the opportunity to depose them about the basis for the claimed costs of $13,916. The district court asked EEG whether it would present witness testimony, and EEG responded that it would. Having originally stated that it would grant a continuance to the County if it was not ready to proceed due to EEG's failure to consult with the County on a hearing date, the district court nevertheless proceeded to conduct an evidentiary hearing. The only witness to testify was EEG's chief operating officer, Mark Owens. The only documents offered into evidence were an invoice from EEG and two Office Depot receipts.

Owens testified that he received a call from SCS's "parent company" on April 20,

2

2018, asking whether he "had any information on a particular site," and that he began researching it. At the time of the call, he was not told whether the parent company had been sued, and he did not know whether to expect service of a subpoena. Owens spent "probably half an hour" researching from April 20 to April 25. He recalled being served with the County's subpoena on April 25, 2018.

Owens testified that he, EEG's executive vice president, Bruce Britten, and EEG's president/chief executive officer, Kimberly Millette, conducted the search for documents pertaining to the South Beverly site because they would know what to look for and where to look for it and because EEG had no administrative staff. Owens noted that he was the only person who had been with EEG "the entire length of time that this [site] was a project for the company." Owens said that Britten was involved with the site as the manager of this project from 2007 to 2016. Owens focused his search on "the stuff that predated [Britten]," but there was some overlapping effort, as Owens recalled "looking for some of the things that [Britten] was involved in, but [Britten] predominantly did the stuff he was in charge of from 2007 [forward]." Owens stated that Millette, who was in charge of "overall accounting functions and invoicing," would have searched for all the pertinent accounting records. Owens testified that he took the responsive documents to Office Depot/Office Max[1] for copying and scanning, and his wife retrieved the documents on May 7, 2018. An Office Depot receipt admitted into evidence shows that the May 7 transaction occurred at 11:20 a.m.

During Owens's testimony, EEG offered into evidence its $13,916.95 invoice:

---

[1] Although counsel and Owens referred to Office Depot/Office Max interchangeably during the hearing, we refer only to Office Depot for consistency.

*EE&G, Inc.*

*1632 Southeast Parkway*
*Azle, TX 76020-3923*

# *Invoice*

| Date | Invoice # |
|------|-----------|
| 5/24/2018 | 180446 |

| Bill To |
|---------|
| Baker Wotring LLP<br>700 JPMorgan Chase Tower<br>600 Travis Street<br>Houston, TX 77002 |

| Terms | EE&G Project Number |
|-------|---------------------|
| Due upon receipt | 97.1093FT |

| Description | Quantity | Rate | Amount |
|-------------|----------|------|--------|
| Document Production<br>D-1-GN-18-001884<br>Wichita County v. Southwest Convenience Stores, LLC | | | |
| Document Production<br>Mark A. Owens, PG, Chief Operating Officer: 4/20/18 - 5/23/18 | 22.5 | 185.00 | 4,162.50 |
| R. Bruce Britten, PG, Executive Vice President: 4/20/18 - 5/23/18 | 11 | 185.00 | 2,035.00 |
| Kimberly Millette: President/Chief Executive Officer: 4/20/18 - 5/23/18 | 5 | 275.00 | 1,375.00 |
| Legal Fees: Grissom & Thompson, LLP | | 2,000.00 | 2,000.00 |
| Other Costs: Reproduction & Scanning<br>Office Depot/Office Max: 5/1/18 #6684-4-4052-886127-18.4.2 | | 2,304.10 | 2,304.10 |
| Office Depot/Office Max: 5/7/18 #6684-4-4506-773742-18.4.2 | | 2,040.35 | 2,040.35 |
| Please Remit to:<br><br>EE&G, Inc.<br>1632 Southeast Parkway<br>Azle, Texas 76020-3923 | | | |

| Total | $13,916.95 |
|-------|------------|

| Payments/Credits | $0.00 |
|------------------|-------|

| **Balance Due** | $13,916.95 |
|------------------|------------|

Page 59 of 117

4

EEG's counsel told the district court that the executives' hourly rates in the invoice were "their normal billing rate[s]." Owens acknowledged that the invoice had "all the details, cost[s] of document production that [EEG was] seeking to recover," and he asked the district court to award costs as set forth in the invoice.[2]

According to EEG's invoice, all three EEG executives who billed their time for "document production" listed the same block of time from April 20, 2018, to May 23, 2018. The County argued to the district court that the invoice included dates before the service of the County's subpoena (on April 25) and after the last set of documents had been retrieved from Office Depot (on May 7). Britten billed time at his professional geologist rate starting April 20, but Owens testified that he did not know whether Britten "had any actual time" between April 20 and April 24. Similarly, although the invoice shows that Millette billed time at her "president and CEO" rate starting April 20, Owens testified that Millette did not start billing her time on that day. Owens explained that "it was a block of time we used from when I started to when I stopped working. So that was kind of the block we used for everybody." EEG's counsel handled delivery of the responsive documents to the County, offering to provide them "on a CD or USB," and forwarded EEG's invoice to the County.

Owens denied having any records of the EEG executives' time aside from the totals listed on the invoice. He testified that they did not enter daily time records or time sheets. He stated, "Not for a project like this. Only—just specifically for the date." Owens was unsure how much time

---

[2] EEG produced the two receipts from Office Depot for the first time at the hearing.

the three EEG executives incurred after May 7, when the last documents had been retrieved, but it was "not a lot." He said that they would "go through [the boxes] when they came back."

As for his own time, Owens acknowledged that the 22.5 hours represented "the actual hours that [he] put in searching for records requested by the subpoena." Owens testified that he billed the time spent searching for these records at a professional geologist rate that he thought was appropriate. The district court admitted the invoice into evidence over the County's objections that: (1) the invoice contained "hearsay within hearsay" and (2) Owens did not have a "proper foundation for testifying about this." In arriving at EEG's costs, the district court excluded the invoice's line item for legal fees. *See BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 874 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (concluding that "costs of production" under Rule 205.3(f) does not include attorney's fees). The district court also deducted the cost for hard copies that EEG never provided to the County.

After the hearing, the district court ordered the County to pay EEG $11,283.89 (the difference between the $13,916.95 that EEG claimed minus $2,000 in legal fees and minus $633.06 for hard copies not provided to the County) within seven days of the order as reasonable costs of production. This calculation included the time block billed by EEG's three executives in the invoice. The County nonsuited its claims against SCS without prejudice and filed this appeal. EEG subsequently sought a show-cause order against the County and its counsel or the county judge, but the district court declined to enter those orders ex parte, concluding that it was "inappropriate" to do so and that the matter "should be noticed for hearing." EEG then filed a motion for contempt and sanctions with the district court, and the County filed an emergency motion in this Court to stay

6

enforcement of the order on costs. We issued an order staying the enforcement of the costs order and EEG's motion for contempt and sanctions. *Wichita Cty. v. Environmental Eng'g & Geotechnics, Inc.*, No. 03-18-00434-CV, 2016 Tex. App. LEXIS 13931, at \*1 (Tex. App.—Austin July 16, 2016, order).

## DISCUSSION

**First issue: Refusal to permit County to conduct discovery on EEG's demand for costs**

In its first issue, the County challenges the district court's order "refusing to permit" the County to conduct discovery as to the reasonableness of EEG's costs. Specifically, the County wanted to depose an EEG witness before the district court's hearing on the motion for costs. However, the County did not obtain an adverse ruling from the district court to preserve this issue for appeal. *See* Tex. R. App. P. 33.1(a). First, the County never noticed the deposition of an EEG witness. Second, the County did not request a continuance to depose an EEG witness before the motion for costs was heard. Third, the County did not renew its announcement of "not ready" for an evidentiary hearing when the district court stated its intent to proceed with the hearing or when Owens took the stand to testify in support of EEG's calculation of its costs for production of documents. On this record, we cannot conclude that the County has shown that the district court refused to permit discovery as to the reasonableness of EEG's costs. Accordingly, we overrule the County's first issue.

**Second issue: Sufficiency of evidence supporting $11,283.89 as "reasonable costs of production"**

In its second issue, the County challenges the district court's order awarding $11,283.89 to EEG as reasonable costs of production "based upon the limited evidence presented"

7

at the hearing.  Rule 205.3(f) states: "A party requiring production of documents by a nonparty must reimburse the nonparty's reasonable costs of production." Tex. R. Civ. P. 205.3(f).  By ordering the County to pay EEG's "reasonable costs of production of $11,283.89," the district court implicitly found that the amount of costs EEG requested—excluding the legal fees and the costs of hard copies never produced—was reasonable.

Fairly construed, the County's briefing and oral argument as to its second issue challenge both the legal sufficiency and factual sufficiency of the evidence supporting the reasonableness of the costs in the district court's order.  *See* Tex. R. App. P. 38.1(f) (providing that party's "statement of an issue or point will be treated as covering every subsidiary question that is fairly included").  The Texas Supreme Court has "firmly mandated that courts broadly construe issues to encompass the core questions and to reach all issues subsidiary to and fairly included within them."  *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 Tex. LEXIS 389, at *14 (Tex. Apr. 26, 2019); *see Majeed v. Hussain*, No. 03-08-00679-CV, 2010 Tex. App. LEXIS 8477, at *25-26 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.) (noting that brief must state concisely all issues or points presented for review "which are to be treated as covering every subsidiary question that is fairly included").  Here, a subsidiary issue challenging the factual sufficiency of the evidence is fairly included in the County's framing of its second issue: that the court erred by awarding EEG $11,283.89 "based upon the limited evidence presented" to the court at the hearing and that the order "was not based upon **sufficient** evidence."  *See Rohrmoos Venture*, 2019 Tex. LEXIS 389, at *14; *Majeed*, 2010 Tex. App. LEXIS 8477, at *20-21 (concluding that party's no-evidence and insufficient-evidence arguments were sufficiently specific to preserve his

8

legal and factual sufficiency complaints) (emphasis added). The County's brief requested that this Court reverse the award of costs because it was not based on sufficient evidence, and the County's counsel stated during oral argument that the record shows EEG "incurred some costs from the 25th [of April] to the 7th [of May]." He stated that this is "similar to an attorney's fees case in which they don't segregate their fees."[3] Such cases present factual-sufficiency issues because unsegregated attorney's fees are some evidence of what the segregated amount should be. *See Tony Gullo Motor I, L.P. v. Chapa*, 212 S.W.3d 299, 314-15 (Tex. 2006). A subsidiary issue challenging the legal sufficiency of the evidence is also fairly included in the County's briefing, complaining about the lack of evidence supporting the costs that EEG billed before the subpoena was served and after the last responsive documents were retrieved. The County's counsel referenced these two time intervals during oral argument: "Those specifics are challenges to the legal sufficiency. There's just **no evidence** about why they should get costs from April 20th to the 25th or past May 7th." (Emphasis added.)

Sidestepping the County's subsidiary issue on the factual sufficiency of the evidence would be inconsistent with the County's briefing and our own precedent. *Cf. In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (noting that argument counsel had disavowed to court—unlike here—"was entirely consistent with" his statement of issue presented in his briefing); *Majeed*, 2010 Tex. App. LEXIS 8477, at *20-21 (concluding that party's arguments that "[t]here is no evidence" and that "the evidence is insufficient" were sufficiently specific to preserve party's complaints that

---

[3] The dissent omits reference to these statements by the County's counsel raising the factual-sufficiency subpoint and focuses only on counsel's statement as to the legal-sufficiency subpoint.

"there was legally **and** factually insufficient evidence" to support certain elements of plaintiff's claim) (emphasis added); *Crocker v. Attorney Gen. of Tex.*, 3 S.W.3d 650, 653 (Tex. App.—Austin 1999, no pet.) ("Although [appellant] does not state whether he contests the legal or the factual sufficiency of the evidence to support this finding, we construe his argument as a challenge to the factual sufficiency of the evidence."). The dissent suggests that we should narrow our review of the County's second issue to exclude its factual-sufficiency subpoint based on relief that the County requested during oral argument for its legal-sufficiency subpoint.[4] The dissent also faults the County for not specifically requesting a remand in its briefing, which sought reversal of the district court's order awarding costs "because it is not based upon sufficient evidence."

Whether a party requests remand is immaterial if the party is ultimately entitled to reversal because the party's prayer does not determine the disposition of a case. *See Garza v. Cantu*, 431 S.W.3d 96, 108-09 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that upon reversal Texas Rule of Appellate Procedure 43.3 allows for rendition and remand, but "nowhere does the rule suggest that when a trial court's judgment should be reversed, we must instead affirm it if the appellant fails to request the correct post-reversal disposition"); *Ibrahim v. Young*, 253 S.W.3d 790, 807 (Tex. App.—Eastland 2008, pet. denied) (concluding that party's prayer seeking reversal and remand did not limit court's authority to reverse and render); *see also* Tex. R. App. P. 43.3(a). This Court has likewise rejected the contention that a party waives any entitlement to a remand by

---

[4] The cases cited to support this proposition involve relief that was not first requested from the trial court. *Cf. Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 392 (Tex. 2011) (unpled compensation claim); *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008) (unrequested sanctions). No such problem is present here.

failing to request such relief in its brief. *Majeed*, 2010 Tex. App. LEXIS 8477, at \*28-29. We stated that a prayer omitting a request for the appropriate appellate remedy, or requesting the wrong one, is the sort of briefing defect that a party should be permitted to cure or should have no impact on the appellate court's judgment. *Id*. And we held that an appellant's "omission of an explicit prayer for a remand in his appellant's brief does not waive his entitlement to such relief or limit our power to award it under rule 43.3 if we sustain any of [appellant's] issues on appeal." *Id*. at \*29. We decline to disregard our own precedent and unnecessarily narrow our review of the County's second issue.

### Standard of review

We must discern the proper standard for reviewing the reasonableness of an award of document-production costs that is largely the sum of three line items block billed by nonlawyers. *See Castro v. Precision Demolition LLC*, Civil Action No. 3:15-CV-0213-D, 2017 U.S. Dist. LEXIS 205355, at \*16 (N.D. Tex. Dec. 14, 2017) (noting that courts disfavor block billing because it impairs assessment of billing's reasonableness). To determine the correct standard of review, we look first to the rule itself. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Coronado v. Norman*, 111 S.W.3d 838, 841 (Tex. App.—Eastland 2003, pet. denied) ("To determine the correct standard of review, we look at the rule.").

Rule 205.3(f) provides that "[a] party requiring production of documents by a nonparty **must** reimburse the nonparty's reasonable costs of production." Tex. R. Civ. P. 205.3(f) (emphasis added). Rule 205.3(f) does not define the standard for reviewing a trial court's ruling on the reasonable costs of required production of documents from a nonparty. However, the rule does specify that such reimbursement is mandatory—i.e., that the requesting party "must reimburse" the

11

nonparty—distinguishing this rule from other contexts in which a trial court may or may not make an award or reach a certain conclusion. *Id*.

The dissent concludes that an abuse-of-discretion standard applies, relying in part on cases in which attorney's fees were awarded as a deterrent, penalty, or sanctions. In those cases, the award of attorney's fees followed a party's failure to file an answer, noncompliance with statutory expert-report requirements, and infringement on another's exercise of the right to free speech, petition, or association. *See* Tex. Civ. Prac. & Rem. Code §§ 27.009 (authorizing attorney's fees awards under Texas Citizens Participation Act), 74.351(b) (authorizing attorney's fees awards under Medical Liability Act); Tex. R. Civ. P. 244 (authorizing fees, taxed as costs, for attorney appointed for defaulting defendant served by publication); *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014) (noting that imposition of sanctions is reviewed under abuse-of-discretion standard); *Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009) (recognizing attorney's fees awarded under section 74.351(b)(1) as sanctions). This is not a case in which fees or costs were imposed as a consequence of a party's failure to act or wrongdoing. EEG never contended that the County's document request was improper and made no objection to it. There is no reason to penalize the County. The only purpose for awarding costs under Rule 205.3(f) is to "reimburse" the nonparty. Tex. R. Civ. P. 205.3(f).

The dissent's standard-of-review discussion also relies on cases in which the authorizing statute makes an award of attorney's fees discretionary. *See, e.g.*, *Bocquet*, 972 S.W.2d at 21 (discretionary award of fees under Declaratory Judgments Act in section 37.009 of Civil Practice & Remedies Code); *Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 623 (Tex.

12

App.—Austin 2010, no pet.) (same); *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.) (discretionary award of fees in suit affecting parent-child relationship under section 106.002 of Family Code). Plainly, an abuse-of-discretion standard applies when the authorizing statute itself makes an award of attorney's fees discretionary. *See Bocquet*, 972 S.W.2d at 20. That is not the case under Rule 205.3(f), which requires reimbursement.

Further, reimbursement-amount decisions under Rule 205.3(f) are distinguishable from procedural or trial-management decisions involving the admission of evidence, discovery sanctions, or attorney disqualification, indicating that we do not apply an abuse-of-discretion standard. *See In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) (noting that abuse-of-discretion standard applies when trial court has discretion either to grant or deny relief based on its factual determinations and typically applies to procedural or trial-management decisions such as admission of evidence, discovery sanctions, and attorney disqualification); *Bocquet*, 972 S.W.2d at 20-21 (concluding that award of attorney's fees under Declaratory Judgments Act is discretionary and applying multifaceted review of evidentiary and discretionary matters); *see also In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (orig. proceeding ) (applying abuse-of-discretion standard to review trial court's order compelling discovery beyond rules of civil procedure). When a trial court makes a finding under Rule 205.3 about what amount of costs are reasonable, it makes a factual determination. *See In re Doe*, 19 S.W.3d at 253 (contrasting factual determinations from rulings requiring court to weigh policy considerations). "When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards." *Id*. (citing *Bocquet*, 972 S.W.2d at 21; *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.

13

1994)); *see Santos v. Texas Enters.*, No. 03-09-00579-CV, 2010 Tex. App. LEXIS 8322, at *5 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.) ("We review a trial court's determination regarding the amount of attorney's fees [under statute mandating them] for legal and factual sufficiency of the evidence"); *Brazos Elec. Power Coop., Inc. v. Weber*, 238 S.W.3d 582, 583 (Tex. App.—Dallas 2007, no pet.) (noting that statute mandated award of attorney's fees and that "[o]ur review of the trial court's award, in turn, asks whether there was sufficient evidence that the fees awarded were in fact reasonable and necessary"); *Cox v. Wilkins*, No. 03-05-00110-CV, 2006 Tex. App. LEXIS 2598, at *18 (Tex. App.—Austin Mar. 31, 2006, pet. denied) (mem. op.) (noting that statute mandated award of attorney's fees and that "we review the amount awarded as attorney's fees under a sufficiency of the evidence standard"); *see also Barnes v. University Fed. Credit Union*, No. 03-10-00147-CV, 2013 Tex. App. LEXIS 4871, at *36 (Tex. App.—Austin Apr. 18, 2013, no pet.) (mem. op.) ("The standard of review for remitting excessive damages, including excessive attorneys' fees, is factual sufficiency."). For all these reasons, the cases cited by the dissent should not guide our discernment of the proper standard here.

A factfinder's compensatory award of nonpunitive costs, like the one we reviewed in *CS Custom Homes, LLC v. Stafford*, No. 03-13-00315-CV, 2015 Tex. App. LEXIS 9837 (Tex. App.—Austin Sept. 23, 2015, no pet.) (mem. op.), is more instructive in this context. In *Stafford*, we reversed the factfinder's award of expenses claimed by an engineer because his invoices—listing time billed, hourly rates, and total amount charged—provided legally insufficient evidence of reasonable costs of repair. *Id*. at *16-17. When reviewing the award in that case, unlike in many attorney's fees cases, there was no basis for implying the factfinder's familiarity with "usual and

14

customary" fees or for taking judicial notice of the reasonableness of fees claimed by a prevailing party. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 38.001, .003; *Smith v. Patrick W. Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). The sole gauge of the reasonableness of the engineer's billing in *Stafford*—as with the professional geologists' and CEO's billing here—was the evidence presented to the factfinder. 2015 Tex. App. LEXIS 9837, at \*16 (noting that record lacked evidence from which factfinder could reasonably discern that charges in invoice—whether hourly rate, amounts charged per task, or their total amount—were reasonable amounts to pay engineer for services he and his firm provided). We reviewed a challenge to the evidence about the reasonableness and necessity of the engineer's claimed expenses using a legal-sufficiency standard. *Id*. at \*13-14. Similarly here, we will review the reasonableness of the $11,283.89 award of document-production costs to EEG for legal and factual sufficiency. *See In re Doe*, 19 S.W.3d at 253 ("When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards." (citing *Bocquet*, 972 S.W.2d at 21; *Catalina*, 881 S.W.2d at 297)).

When, as here, no findings of fact or conclusions of law are requested or filed, we imply all findings that are necessary to support the trial court's ruling and supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Because this appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *See BMC Software*, 83 S.W.3d at 795. Even findings as to witness credibility must be reasonable, and a factfinder is not free to believe testimony that is conclusively negated by undisputed facts. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). We apply the same

15

standards of review to the trial court's implied findings that we apply when reviewing the legal and factual sufficiency of evidence supporting a jury's verdict. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina*, 881 S.W.2d at 297).

A movant who, like EEG, asserts a right to some active relief on his own behalf bears the burden of proving his right to that relief. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 350 (Tex. 1955) ("[I]f one party is asserting a right to damages or some other active relief in his own behalf, the burden of proving his right to that relief still rests upon him."). When a party challenges the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, as the County does here, the party must demonstrate that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* (citing *City of Keller*, 168 S.W.3d at 827). We credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *Id.* We sustain a no-evidence challenge only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810, 822.

When a party challenges the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v.*

16

*Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In reviewing a finding for factual sufficiency, we examine the entire record, considering the evidence in favor of and contrary to the challenged finding. *See id*. We must not merely substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and explain how the contrary evidence greatly outweighs the evidence in support of the challenged finding. *Id*.; *see also Windrum v. Kareh*, No. 17-0328, 2019 Tex. LEXIS 52, at *45-46 (Tex. Jan. 25, 2019). We consider the legal-sufficiency challenge first. *See Windrum*, 2019 Tex. LEXIS 52, at *44 (citing *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401-02 (Tex. 1981)), and noting that court of appeals ordinarily will not address factual sufficiency of evidence if it determines evidence is legally insufficient).

### No evidence of "reasonable costs of production" before subpoena served

In this case, the starting point for determining EEG's "reasonable costs of production" in response to the County's subpoena under Rule 205.3 is no earlier than April 25, 2018, the undisputed date of service of the subpoena. As we have noted, Rule 205.3(f) provides that "[a] party requiring production of documents by a nonparty must reimburse the nonparty's reasonable costs of production." Tex. R. Civ. P. 205.3(f). EEG contends that the required document production "cost what it cost." We disagree.

By its terms, Rule 205.3(f) does not allow reimbursement for just any expense claimed by a nonparty; rather, repayment to a nonparty is restricted to the reasonable costs of "requir[ed] production of documents." *Id*. & cmt. (noting that under this rule, party may subpoena nonparty's production of documents); *see BASF Fina Petrochemicals Ltd. P'ship*, 168 S.W.3d at 874

17

(excluding recovery of attorney's fees from "costs of production" under Rule 205.3(f)); *see also St. Luke's Episcopal Hosp. v. Garcia*, No. 14-96-00928-CV, 1996 Tex. App. LEXIS 5893, at *10-11 (Tex. App.—Houston [14th Dist.] Aug. 9, 1996, orig. proceeding) (addressing prior rule governing subpoenas for documents in Rule 177a and noting that rule provided relief from "subpoenas requiring the recipient to expend some amount of money in copying costs"). Owens testified at the hearing that he did not know whether to expect a subpoena before April 25, 2018:

> Q. Okay. And you were served with the subpoena on April 25th. How is it that you began work on 4/20 versus the date that you received it?
>
> A. I received a phone call from my client or—it's a parent company to Southwest Convenience Stores, regarding if I had any information on a particular site. And, you know, it was two years old so I wasn't sure, so I initiated some initial looking into the files at that point. And that was April 20th.
>
> Q. So is that when you learned you were going to be served with a subpoena?
>
> A. No. I didn't know for sure one way or another. That was just a question that pertained to this site.
>
> . . . .
>
> Q. Okay. Did your client tell you in that call that they had been sued?
>
> A. No. Not in that call.

Nevertheless, as we have noted, all three EEG executives who billed their time for "document production" listed a block of time beginning April 20, 2018—five days before the service of the County's subpoena. Recoverable costs under Rule 205.3(f)—properly considered within the whole of the provisions in Rule 205 and not in isolation—are for the "requir[ed] production of

18

documents," i.e., document production compelled by the subpoena. Tex. R. Civ. P. 205.3(a) (allowing party to compel production of documents from nonparty by subpoena), (d) (requiring nonparty to respond to subpoena as required by Rule 176.6), (f) (mandating reimbursement of reasonable costs of production of documents to nonparty required to produce them); *Heritage on the San Gabriel Homeowners Ass'n v. Texas Comm'n of Envtl. Quality*, 393 S.W.3d 417, 425 (Tex. App.—Austin 2012, pet. denied) ("We consider rules as a whole rather than considering their provisions in isolation."). We do not foreclose the possibility that a nonparty might incur costs of production in reasonable anticipation of service of a subpoena. But on this record, Owens's testimony confirms that costs billed before service of the subpoena April 25, 2018, were not incurred because the County was "requiring production of documents" from EEG; rather they were costs of responding to an inquiry from EEG's client. *See* Tex. R. Civ. P. 205.3(a),(f); *Garcia*, 1996 Tex. App. LEXIS 5893, at *10-11 (noting that prior Rule 177 governing subpoenas for documents provided relief from "subpoenas requiring the recipient to expend some amount of money in copying costs"); *cf. City of Hous. v. Maguire Oil Co.*, 342 S.W.3d 726, 749 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (rejecting claim that photocopying expenses were court costs and noting that party "did not establish that its photocopy expenses were attributable to responding to document requests from the City as opposed to general copy costs in litigation"). EEG presented no evidence showing that any costs billed before April 25 were incurred because the County was "requiring production of documents" from EEG. *Cf.* Tex. R. Civ. P. 205.3(a), (d), (f).

The district court made no express finding that costs billed before April 25 were incurred because the County was "requiring production of documents" from EEG, and we may not

imply that finding because it is unsupported by the undisputed evidence in this record. *See City of Keller*, 168 S.W.3d at 820; *BMC Software*, 83 S.W.3d at 795. Owens testified that he spent "probably half an hour" researching from April 20 to April 25 before service of the subpoena. Britten also billed "document production" time using his professional geologist rate for dates before the subpoena was served, but Owens was unable to state whether Britten "had any actual time" between April 20 and April 24.[5]

Even when the evidence in this record is considered in the light most favorable to the implied finding that the $11,293.89 of costs EEG requested was reasonable and crediting the evidence supporting that implied finding, a reasonable factfinder could not disregard that there was no evidence showing that EEG incurred any costs before April 25, 2018, due to the County "requiring production of documents" from EEG. *See Exxon*, 348 S.W.3d at 215 (citing *City of Keller*, 168 S.W.3d at 827). Accordingly, we conclude that EEG did not meet its burden to provide the district court with legally sufficient evidence supporting its implied finding that the reasonable costs of complying with the County's subpoena for documents—inclusive of billing for dates preceding service of the County's subpoena on April 25—was $11,293.89. *See* Tex. R. Civ. P. 205.3(f); *Exxon*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827. EEG was not entitled to at least half an hour of time that it billed and that the district court awarded in its order.[6]

---

[5] As EEG's counsel acknowledged at oral argument,"there is nothing in the record that tells us one way or the other" whether Britten's charges for his time were for work before the subpoena was served.

[6] The total overbilled amount for that half hour is $92.50, calculated as .5 hour at Owens's rate of $185.00 per hour. As we have noted, Britten also billed for time spent on document production before the date of service of the subpoena, but whether he actually did any work during that time is unknown.

20

**Insufficient evidence of "reasonable costs of production" after subpoena served**

The County acknowledges that this record contains evidence showing that EEG incurred some costs from April 25 to May 7. But it contends that EEG did not meet its burden of showing that the full amount of its claimed costs during that time was reasonable, i.e., that the evidence supporting the awarded amount of EEG's costs is not factually sufficient. The County specifically contends that "[t]he court erred in awarding EEG for the time its professionals claim that they spent on this matter."

In support of its "reasonable costs of production" under Rule 205.3, EEG presented the County and the district court with an invoice totaling $13,916.95. From that invoice, the district court deducted amounts based on EEG's improper claim of attorney's fees and its claim for costs of hard copies never produced to the County. Those deductions reflect the district court's determination that the invoice listing the amounts EEG billed did not itself show the reasonableness of those amounts. Even after those deductions, the evidence showing that EEG did not prove reasonable costs of production totaling $11,283.89 greatly outweighs the evidence supporting the implied finding that the full amount of such costs was shown to be "reasonable costs of production." *See Windrum*, 2019 Tex. LEXIS 52, at *45-46; *Golden Eagle Archery*, 116 S.W.3d at 761.

The categories of costs remaining after the district court's deductions for the disallowed attorney's fees and hard copies were: (1) the costs for scanning documents done by Office Depot, and (2) the invoice's block billing for three EEG executives under the heading of "document production." As to the first category, EEG presented the district court with itemized receipts from

21

Office Depot showing that EEG incurred costs for scanning documents totaling $3,711.39.[7] Thus, there is some evidence that EEG incurred this amount as "reasonable costs of production" after service of the County's subpoena. But as to the second category, the evidence EEG presented to the district court for the document production undertaken by its three executives did not support the full amount of the claimed costs.

Owens testified on direct examination that the entirety of his 22.5 hours invoiced to the County were spent searching for records requested by the subpoena:

> Q.    Again, you have 22.5 hours. Is that the actual hours that you put in on—searching for records requested by the subpoena?
>
> A.    Yes. It may be a little low, but yes. That's—yeah.

Nothing in the record reflects that Owens was "searching" for records requested by the County anytime after May 7, 2018, at 11:20 a.m., when his wife retrieved the last set of responsive documents from Office Depot and EEG paid the "final bill." EEG's counsel handled the subsequent delivery of those documents to the County. Owens did not testify that he spent any time after May 7, 2018, searching for records requested by the subpoena. Whatever he may have done to incur costs of production for EEG for sixteen days from May 7 through May 23 is not reflected in the invoice.[8]

---

[7] The scanning costs consisted of four charges: $1,500.00 and $1,070.00 for regular document scanning and $448.50 and $361.79 for "hand" scanning plus sales taxes of $175.60 and $155.50. Owens testified that he was told hand scanning was necessary for hard-copy photographs.

[8] Owens testified that he did not hire an assistant because he was "going to be the one that has to say that we found all our documents and presented them all, so I need to be in the loop" on the document search. Contrary to the dissent's suggestion, this testimony—in proper context—is no evidence of how Owens (or anyone else) spent the time that was block billed after May 7.

22

The invoice was the only basis for the amounts billed by Britten and Millette. Owens testified that none of the three EEG executives tracked his or her time for this kind of project in daily records or time sheets, "[o]nly—just specifically for the date." The specific dates in the invoice were inaccurate. The invoice showed that the three EEG executives used the same overinclusive set of dates for their billing in the invoice, relying on "a block of time . . . from when [Owens] started to when [Owens] stopped working." As we have noted, Owens's referenced block of time from April 20 to May 23 was improperly based on time that he billed before the service of the subpoena and time that he did not claim to have spent "searching" for responsive documents.

The only testimony as to amounts billed after May 7 (when the last documents had been retrieved), was Owens's generalization that "we'd go through [the boxes] when they came back" and that it was "not a lot." The only documentary evidence of the executives' billing was the invoice, and it offers no assistance in showing the reasonableness of any amount of costs incurred for sixteen days after the last set of documents were retrieved.[9] Owens acknowledged that the invoice had "all the details, cost[s] of document production that [EEG was] seeking to recover," and that all of his billed time in the invoice was spent searching for records. No evidence exists that Owens billed the County for any time spent reviewing the documents that had already been found

_____

[9] Owens testified that the executives' time records were "[o]nly—just specifically for the date." Based on the dates in the invoice, EEG's sixteen-day period of costs claimed after the documents were found and retrieved (included within EEG's block-billed time from April 20 to May 23) is longer than the twelve total days, at most, that EEG could have spent finding those documents. See Castro v. Precision Demolition LLC, Civil Action No. 3:15-CV-0213-D, 2017 U.S. Dist. LEXIS 205355, at *16 (N.D. Tex. Dec. 14, 2017) (stating that courts disfavor block billing because it impairs assessment of billing's reasonableness).

23

and no evidence exists that EEG performed any task for the County free of charge.[10] We may not imply findings otherwise that would be unsupported by this record. *See City of Keller*, 168 S.W.3d at 820; *BMC Software*, 83 S.W.3d at 795.

On this record, the evidence that EEG did not meet its burden of proving $11,283.89 as its reasonable costs of production—inclusive of billing dates before April 25 and after May 7—greatly outweighs the evidence supporting the district court's implied finding that EEG proved the full amount of such costs as reasonable costs of production. *See Windrum*, 2019 Tex. LEXIS 52, at *45-46; *Golden Eagle Archery*, 116 S.W.3d at 761. The only cost of production supported by legally and factually sufficient evidence in the court below is the cost for scanning documents totaling $3,711.39. Accordingly, after examining all of the record and considering the evidence in favor of and contrary to the district court's implied finding that EEG proved reasonable costs of production totaling $11,283.89, we conclude that such implied finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We sustain the County's second issue.

We have found no cases addressing the proper disposition of an appeal when a nonparty presents insufficient evidence to support the full amount of its award under Rule 205.3(f). In other contexts, when insufficient evidence is presented to support the full amount of an award, the Texas Supreme Court has sometimes remanded the case to the court of appeals to consider suggesting remittitur and, at other times, remanded the case to the trial court for reconsideration of the award. *See, e.g.*, *Rohrmoos Venture*, 2019 Tex. LEXIS 389, at *79 (reversing court of appeals'

---

[10] The likelihood that EEG donated any of its executives' time to the County is also dispelled by EEG's assertion that it sought recovery for document production that "cost what it cost."

24

judgment as to attorney's fees award because record failed to provide requisite details supporting that award and remanding cause to trial court for redetermination of fees); *Kinsel v. Lindsey*, 526 S.W.3d 411, 428 (Tex. 2017) (affirming court of appeals' judgment remanding cause to trial court for reconsideration of attorney's fees award after noting that failure to segregate attorney's fees—between claims for which fees are recoverable and claims for which they are not—does not preclude recovery of attorney's fees); *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007) (remanding to court of appeals to consider remittitur after concluding that there was legally sufficient evidence that medical expenses were causally related to accident but legally insufficient evidence to prove which medical conditions generated all medical expenses or whether accident caused all such conditions and expenses of treatment); *Chapa*, 212 S.W.3d at 313-15 (remanding cause to court of appeals after noting that "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be" and cautioning that unrecoverable fees are not rendered recoverable "merely because they are nominal"); *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 740 (Tex. 1997) ("When supported by legally sufficient evidence, an unsegregated damages award—whether in the form of attorney's fees or actual damages—ordinarily requires a remand."); *see also Enzo Invs., L.P. v. White*, 468 S.W.3d 635, 654-55 (Tex. App.—Houston [14th Dist] 2015, pet. denied) (modifying judgment as to attorney's fees following remittitur and affirming judgment as modified).

In analogous cases involving lump-sum fee awards based on charges from multiple attorneys, where some attorneys provided sufficient proof of their fees but others did not, courts have parsed the components of the award based on the sufficiency of the proof from each attorney. *See*

25

*City of Laredo v. Montano*, 414 S.W.3d 731, 736-37 (Tex. 2013) (affirming court of appeals' judgment as to part of award attributable to one attorney who provided legally and factually sufficient evidence of her fees but reversing part of award attributable to another attorney who provided no documentation of his time and remanding case to trial court for further proceedings); *Enzo Invs.*, 468 S.W.3d at 654-55 (modifying judgment following remittitur and affirming judgment as modified after concluding that evidence was legally insufficient to support full amount of attorney's fees awarded because of one attorney's deficient affidavit but concluding that evidence was legally sufficient to support reduced amount of award based on two other attorneys' affidavits). Similarly here, the evidence is insufficient to support the full amount of $11,283.89 awarded to EEG as reasonable costs of production of documents in response to the County's subpoena, given the overinclusive time that EEG billed before service of the subpoena and after the documents had already been found, copied, and retrieved. *See* Tex. R. Civ. P. 205.3(f). But the evidence is sufficient to support a portion of those costs of production totaling $3,711.39, which is the sum of costs for scanning documents by Office Depot that was included in the invoice to the County and supported at the hearing with two Office Depot receipts admitted into evidence. *See id.*

We conclude that remand is required as to Owens's, Britten's, and Millette's respective portions of the costs of production in the district court's order. *See Montano*, 414 S.W.3d at 736-37; *Enzo Invs.*, 468 S.W.3d at 654-55; *see also* Tex. R. App. P. 43.3(a) ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . a remand is necessary for further proceedings[.]").

26

**CONCLUSION**

We have concluded that the evidence is insufficient to support the full amount of $11,283.89 awarded to EEG as reasonable costs of production of documents required by the County's subpoena but that sufficient evidence supports costs totaling $3,711.39. *See* Tex. R. Civ. P. 205.3(f). Accordingly, we: (1) affirm the portion of the district court's order directing the County to pay EEG's scanning expense totaling $3,711.39 as a reasonable cost of production of documents required by the County's subpoena; (2) reverse the portion of the district court's order directing the County to pay EEG $92.50 and render judgment that EEG take nothing for the block-billed time spent prior to April 25, 2018; and (3) reverse the remaining portion of the district court's order directing the County to pay EEG $7,480.00 for the executives' block-billed time and remand this cause for further proceedings consistent with this opinion.

_____
Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana
     Concurring and Dissenting Opinion by Justice Goodwin

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: May 31, 2019