# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00014-CV

**Vincent Thomas Jackson, Appellant**

**v.**

**Lynda Jane Jackson, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-000422, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Vincent Thomas Jackson appeals from a final decree of divorce, arguing in a single issue that the district court abused its discretion by granting an injunction prohibiting him from allowing his daughter (Daughter) to be in the presence of Sherise Beeson or her child until Daughter's third birthday. We will affirm in part and reverse in part.

## BACKGROUND

Lynda Jane Jackson moved from her home in Canada to Indianapolis in 2008 to pursue a relationship with Vincent,[1] who she met through work. They married in 2011. In 2015, the couple moved to Austin, Texas, so that Vincent could pursue work as a percussionist. Lynda found work for an advertising agency that paid for the couple's relocation to Austin. Vincent was hired by a company called 360 Connect. Lynda became pregnant in March 2017. In May of

---

[1] Because the parties share a last name, we will refer to them by their first names.

2017, Sherise Beeson began working at 360 Connect. According to Vincent, both he and Beeson held leadership positions at the company, so they worked together closely and soon began a romantic relationship. Beeson was aware that Vincent was married and expecting a child, and she herself had been married, but her divorce was finalized in June 2017. Beeson has primary possession of her child from that marriage. Vincent testified that he lied repeatedly to conceal the affair from Lynda, who did not learn about it until after she gave birth to Daughter. In the fall of 2017, Daughter was born prematurely and remained in the neonatal intensive care unit, where, Vincent explained, she was "hanging on to life" for five and a half weeks. On the day Daughter was to be released from the hospital, Lynda texted Vincent, who responded, "Unless you want to do that solo, we'll have to grab her in the morning." Lynda went to the hospital herself to collect Daughter, and Vincent joined her there at around 10:00 p.m. Lynda later learned that Vincent was unavailable earlier that evening because he was taking his paramour to dinner. Vincent and Lynda both testified that Vincent spent a lot of time away from Lynda and Daughter as a result of his relationship with Beeson. In messages to Vincent, Beeson provided Vincent with contact information for a divorce attorney and complained about Vincent spending holidays with "another woman" (referring to Lynda). After learning of her husband's ongoing affair, Lynda filed for divorce. Based on her concern that Vincent was placing his and Beeson's desires above Daughter's needs, Lynda sought an injunction to prohibit Vincent from allowing Daughter to have contact with Beeson or Beeson's child "for at least six months following the entry of the decree." Lynda also asked that she be allowed to return to Indianapolis because she had a greater support network of friends and family there to help her raise Daughter, including Vincent's father, who testified that he would help care for Daughter.

2

The district court entered a final divorce decree on the ground of adultery or, in the alternative, insupportability. Under the decree, Lynda may live in either Indianapolis or Austin and Vincent is "permanently enjoined" from "[a]llowing [Daughter] to be in the presence of Sherise Attal Beeson or her child at any time until [Daughter] reaches the age of three years old." In his sole issue on appeal, Vincent argues the district court abused its discretion in granting the injunction prohibiting Vincent from allowing Daughter to be in the presence of Beeson or her child.

## ANALYSIS

Lynda asserts that Vincent did not preserve error as to his appellate issue because he did not raise the issue in district court. Generally, "[t]o raise an issue on appeal, a party must make a timely and specific objection to the trial court." *Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 Tex. App. LEXIS 10326, at *25 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.) (citing Tex. R. App. P. 33.1(a)). During the trial, Lynda and Beeson were each asked about the injunction that Lynda was seeking to prohibit Daughter from having contact with Beeson or Beeson's child. Lynda testified that she was concerned, based on the content of messages between Vincent and Beeson that were produced during discovery, that Beeson was "very possessive" of Daughter and that Vincent and Beeson did not respect Lynda's role as Daughter's mother. In making its oral ruling, the district court stated: "I am going to keep the injunction for Ms. Beeson in place until the child's three . . . ." Vincent's counsel did not object, nor did he say anything else at that time. The court then summarized its ruling in the following exchange:

> [The Court]: I've addressed Ms. Beeson. Injunction in place until the child's three. I've addressed possession. Mom's going to be joint, but she's also—with primary, but she's also going to be the tiebreaker decider in everything. So she'll

3

be the decider for education and medical and psychological.  What am I missing?

[Vincent's Attorney]:  Those are the big ones.

Later during the ruling, Vincent's attorney commented on the injunction, stating:

[Vincent's Attorney]:  The injunction they pled for was before the Court for six months with Ms. Beeson.  And that's their proposed disposition, and I think that's what's before the Court.

THE COURT:  Well—

[Lynda's Attorney]:  I think what we said was at least six months, and I think—

THE COURT:  I mean, I think some of it's going to take care of itself because really it's the next four months.  And then I just don't know what it solves for — I—I'm making my ruling.

[Vincent's Attorney]:  Yeah. I'm sorry.  Just—just—now I'm not trying to—

THE COURT:  I'm making my ruling—

[Vincent's Attorney]:  Can I just say—

THE COURT:  —until three.

[Vincent's Attorney]:  Okay. She's—you said—because you said for the next four months.  She turns two in four months.  So I just wanted to make sure that—

THE COURT:  But then she's moving.

[Vincent's Attorney]:  Okay.

4

THE COURT: So I don't necessarily need him for a year to be with Ms. Beeson—

[Vincent's Attorney]: I just want to make sure I was—

THE COURT: —on the trips to Indianapolis. I don't know what that's helping.

[Vincent's Attorney]: I'm not trying to argue. I'm just trying to be clear on that.

The exchanges reproduced reflect every instance where Vincent's attorney mentioned the injunction. We do not construe any of Vincent's attorney's comments to the district court as an objection. After trial, but before the district court signed the final decree, Vincent requested findings of fact and conclusions of law "with respect to the injunctive relief ordered by the Court," but he did not file a motion for new trial or any other written motion complaining that the district court abused its discretion. However, a complaint about the sufficiency of the evidence in a nonjury case may be raised for the first time on appeal, Tex. R. App. P. 33.1(d), and the issue in question was decided by the trial court and not the jury. We will therefore address Vincent's issue, that "no evidence" supported the injunction, as challenging the legal sufficiency of the evidence underlying the district court's decision to grant the injunction regarding Beeson and her child. *See* Tex. R. App. P. 38.1(f) (providing that party's "statement of an issue or point will be treated as covering every subsidiary question that is fairly included"); *see also Wichita Cty. v. Environmental Eng'g & Geotechnics, Inc.*, 576 S.W.3d 851, 857-58 (Tex. App.—Austin 2019, no pet.) (explaining this Court's obligation to construe issues to encompass the core questions and to reach all issues subsidiary to and fairly included within them); *Panalez v. Telano*, No. 03-14-00675-CV, 2015 Tex. App. LEXIS 11873, at *8 n.6 (Tex.

App.—Austin Nov. 19, 2015, no pet.) (mem. op.) (liberally construing brief to complain of sufficiency in an appeal from a modification order).

Although Vincent requested findings of fact and conclusions of law, the district court did not issue them. The record does not reflect that Vincent filed a notice of past due findings and conclusions. *See* Tex. R. Civ. P. 297; *Coven v. Dailey*, 652 S.W.2d 527, 528 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (party waives error in failure to file findings and conclusions if it does not bring matter to trial court's attention). When a trial court does not issue findings of fact and conclusions of law, we imply all necessary fact findings. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In reviewing legal sufficiency, we consider all of the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could do so and disregarding contrary evidence unless a reasonable juror could not. *In re D.A.*, 307 S.W.3d 556, 561 (Tex. App.—Dallas 2010, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)); *see State v. Crawford*, 262 S.W.3d 532, 544 (Tex. App.—Austin 2008, no pet.) ("Findings of fact in a bench trial are reviewable for legal and factual sufficiency by the same standards as applied in reviewing a jury's findings."). Evidence is legally insufficient only when the evidence establishing a vital fact is so weak that it does no more than create a mere surmise or suspicion. *In re D.A.*, 307 S.W.3d at 561 (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)). As with conservatorship determinations, decisions regarding possession and access are guided by what is in the child's best interest. Tex. Fam. Code 153.002. District courts have broad discretion to determine what is in a child's best interest. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). For a child less than three years of age, the trial court "shall render an order

appropriate under the circumstances" and "shall consider evidence of all relevant factors, including:"

(1)  the caregiving provided to the child before and during the current suit;

(2)  the effect on the child that may result from separation from either party;

(3)  the availability of the parties as caregivers and the willingness of the parties to personally care for the child;

(4)  the physical, medical, behavioral, and developmental needs of the child;

(5)  the physical, medical, emotional, economic, and social conditions of the parties;

(6)  the impact and influence of individuals, other than the parties, who will be present during periods of possession;

(7)  the presence of siblings during periods of possession;

(8)  the child's need to develop healthy attachments to both parents;

(9)  the child's need for continuity of routine;

(10)  the location and proximity of the residences of the parties;

(11)  the need for a temporary possession schedule that incrementally shifts to the schedule provided in the prospective order under Subsection (d) based on:

(A)  the age of the child; or

(B)  minimal or inconsistent contact with the child by a party;

(12)  the ability of the parties to share in the responsibilities, rights, and duties of parenting; and

(13)  any other evidence of the best interest of the child.

Tex. Fam. Code § 153.254(a).  Thus, section 153.254(a) of the Family Code expressly required the district court to consider, inter alia, the impact and influence of individuals such as Beeson who would be present during periods of possession and to protect Daughter's best interest. Vincent argues that no evidence supports the injunction, which he characterizes as a "restriction or limitation" on his possession of Daughter under section 153.193 of the Family Code.  Section 153.193 requires that any restriction or limitation on a parent's possession of a child "may not exceed those that are required to protect the best interest of the child."

Vincent acknowledged that he was the wrongdoer and does not dispute Lynda's account of his relationship with Beeson.  He instead asserts that because he is not a danger to the child, "there is simply no evidence to support the trial court's" injunction.  According to Lynda, the evidence showed that Vincent was "unwilling or unable to disentangle himself from [Beeson] so that he could responsibly focus on and attend to his daughter."  For example, the evidence showed that while Lynda was giving birth to Daughter, Vincent was in the delivery room, with his back to his wife, texting Beeson.  At trial, Lynda testified about her concern that Vincent did not prioritize Daughter's needs when Beeson was present.  She testified that she had concerns about Vincent's inability to concentrate on Daughter and meet Daughter's needs because while the divorce was pending, Vincent would visit Daughter at Lynda's home and often spend that time texting Beeson.  Lynda testified regarding "disturbing" texts between Vincent and Beeson in which Beeson exhibited "possessiveness" over Daughter that made Lynda "incredibly uncomfortable."  Lynda explained that "Vince is doing a lot of what he's doing because she is

8

telling him what to do, and how to behave." She testified that Vincent initially declined to collect Daughter from the hospital on the evening Daughter was discharged because Vincent was taking Beeson to dinner. Vincent ultimately arrived at the hospital at 10:00 p.m., after dinner had concluded, and explained in his brief that he and Lynda took Daughter home "[a]lthough [the date of the dinner] is Sherise's birthday." Lynda testified that Daughter came home from the hospital on a Friday night and that Vincent left the house several times that Saturday and Sunday to visit with Beeson, though he told Lynda it was because he had to work or "go get air." Vincent did not take time off from work to care for Daughter, but continued to stay out of the house often until after 8:00 p.m., although he testified that his work hours were "8:30 to 5:00-ish." Instead, the evidence showed that he spent the time after work with Beeson. In a lengthy email, Beeson complained about Vincent spending time with his "real family," referring to Daughter and Lynda, rather than being attentive to Beeson.

Lynda asked for the injunction, asserting that it was in Daughter's best interest. Vincent disagreed. The district court was charged with deciding, based on the evidence before it, whether the injunction was in Daughter's best interest. We note that the district court had considerable time with the parties and was in the best situation to observe the witnesses' demeanor and personalities. On this record, we conclude the evidence presented to the trial court was legally sufficient to support the trial court's implied finding that enjoining Vincent from permitting Daughter to be in Beeson's presence was in Daughter's best interest. "Every custody and visitation order limits a parent's 'rights' to some extent; that is the nature of such an order." *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) (citing *In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *In re H.D.O.*, 580 S.W.2d 421, 424 (Tex. App.—Eastland 1979, no writ)). However, the record contains no evidence

9

pertaining to Beeson's child, aside from mentions of the child's existence, her name, and the fact that she is about two years older than Daughter. In the absence of any discussion of Beeson's child, aside from tangential mentions of the fact of her existence, we cannot conclude that the evidence was legally sufficient to support the district court's inclusion of that child in the injunction, and the district court therefore abused its discretion in including Beeson's child in the injunction.

## CONCLUSION

For the foregoing reasons, we reverse the portion of the final divorce decree enjoining Vincent from allowing Daughter to be in the presence of Beeson's child, but affirm the portion enjoining Vincent from allowing Daughter to be in the presence of Beeson.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith
  Concurring and Dissenting Opinion by Justice Smith

Affirmed in part; Reversed in part

Filed:   March 6, 2020