**Opinion filed September 30, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00407-CV

_____

## KNOX WASTE SERVICE, LLC AND ADOLPHO MARTINEZ, JR., Appellants

## V.

## JASON SHERMAN AND MELISSA MILES SHERMAN, Appellees

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV35857**

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal of the trial court's denial of Knox Waste Service, LLC's (Knox) and Adolpho Martinez, Jr.'s motion to compel arbitration under the terms of an employment contract. Appellee Jason Sherman disputed his electronic signature on the arbitration agreement, an agreement that invoked the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16; TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015).

On appeal, Appellants claim that the trial court abused its discretion by:

(1) denying their motion to compel Appellees to arbitrate the personal injury claims against Appellants per the terms of the employment contract;

(2) failing to hold an evidentiary hearing before denying the motion; and

(3) failing to sustain Appellants' oral motion to strike Appellees' late response, which contained Sherman's affidavit denying that he signed the arbitration agreement.

We affirm in part and reverse and remand in part.

*I. Background Facts*

Knox is a residential and waste collection service operating out of Tye, Texas. Knox employed Sherman to drive its waste collection vehicles and to assist in the collection of waste. Sherman was in the passenger seat of one of Knox's waste collection vehicles driven by Martinez, another employee of Knox, when the truck was involved in an accident due to "mechanical issues." Sherman sustained severe injuries as a result.

Sherman and his wife, Appellees, filed a common law action against Appellants for personal injuries and loss of consortium, alleging that Appellants' negligence, negligence per se, and/or gross negligence was a proximate cause of their damages. All parties represented to the trial court that the suit was a personal injury claim against the employer—a nonsubscriber under the workers' compensation system of the State of Texas. In response to Appellees' petition, Appellants filed a motion to compel arbitration under the FAA pursuant to an alternative dispute resolution agreement (the Arbitration Agreement) between Sherman, Knox, and Benefit Staffing—a third-party company that contracted with Knox to perform administrative duties and assist in Knox's hiring process. Execution of the Arbitration Agreement by Sherman was affirmatively alleged in Appellants' answer filed on October 8, 2019, and no denial, verified or otherwise,

2

was filed by Appellees prior to the date of the hearing on the motion to compel arbitration. On the evening before the hearing, Appellees filed a response to the motion to compel, attaching an affidavit of Sherman denying that he had signed the Arbitration Agreement. The trial court denied the motion to compel, and this appeal followed.

*II. Analysis*

We first note that we have jurisdiction to consider this interlocutory appeal pursuant to Section 51.016 of the Texas Civil Practice and Remedies Code, which permits an interlocutory appeal of an order denying a motion to compel arbitration when the FAA governs the arbitration agreement. CIV. PRAC. & REM. § 51.016; *see also* 9 U.S.C. § 16(a)(1)(B), (C); *Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n*, 494 S.W.3d 231, 236 (Tex. App—Corpus Christi 2015, no pet.).

*A. By Express Agreement the FAA was Invoked, but Does it Control Here?*

Appellants attached a copy of the Arbitration Agreement purportedly signed by Knox, Sherman, and Jeannie King—an employee and agent for Benefit Staffing at the time the agreement was executed—in support of their motion to compel arbitration. In the Arbitration Agreement, the parties agreed "**to resolve all Claims (as identified below) exclusively through mediation and arbitration, rather than through a jury trial, under the terms of this Agreement**. . . . The promises by the Parties to arbitrate their differences, rather than litigate them before courts or other bodies, constitute considerations for this Agreement." The Arbitration Agreement also states that each party "carefully read this Agreement, understand its terms, and are entering into this Agreement voluntarily and not under any form of duress." Generally, "a written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . 'allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d

3

327, 341 (5th Cir. 2004) (internal quotations omitted) (quoting *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 332 (5th Cir. 1987)).  Thus, Appellants' copy of the signed Arbitration Agreement, by itself, sufficiently establishes the existence of a prima facie valid arbitration.  *See id.*; *see also In re DISH Network, L.L.C.*, 563 S.W.3d 433, 439 (Tex. App.—El Paso 2018, no pet.).

In our review, we note that Section K of the Arbitration Agreement expressly states that "the parties agree that this Agreement will be interpreted, enforced and governed under the [FAA]."  Despite this express agreement, Appellees asserted in their response to Appellants' motion to compel arbitration—as well as on appeal—that the FAA does not control for the following reasons:

1. The FAA's "transportation worker" exception, *see* 9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001);

2. Waiver;

3. Sherman's contention that he did not sign the Arbitration Agreement; and

4. The Arbitration Agreement terms do not require arbitration of a personal injury claim against a nonsubscriber opting out of the Texas workers' compensation insurance coverage.

We will address each of the contentions made by the parties to determine whether an enforceable arbitration exists.  We review de novo whether an enforceable agreement to arbitrate exists.  *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

*1. No Statutory Exclusion: Sherman was not a Transportation Worker*

Although express agreements that certain disputes will be governed under the FAA may eliminate the need to establish that the transaction involves interstate commerce, it "does not preclude, however, the necessity of determining whether 9 U.S.C. § 1 excludes the employee from the FAA's control.  This matter must be analyzed under the FAA itself."  *W. Dairy Transp., LLC v. Vasquez*, 457 S.W.3d

4

458, 463 n.3 (Tex. App.—El Paso 2014, no pet.) (citing 9 U.S.C. § 1; *Circuit City Stores*, 532 U.S. at 119). Accordingly, we must determine whether 9 U.S.C. § 1 exempts the Arbitration Agreement from its scope. *See id.*

The FAA states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court's plurality opinion in *Circuit City* interpreted this language to mean that "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores*, 532 U.S. at 119. Although not expressly defined by *Circuit City*, the term "transportation workers" has generally been defined as those workers "actually engaged in the movement of goods in interstate commerce." *Id.* at 112 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)); *see also Eastus v. ISS Facility Servs., Inc.*, 960 F.3d 207, 211 (5th Cir. 2020); *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996); *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 187 (Tex. App.—Dallas 2013, no pet.). Thus, the exemption should "be afforded a narrow construction." *Circuit City Stores*, 532 U.S. at 118; *see also Rojas*, 87 F.3d at 748.

Several courts have used an eight-factor test—developed by the Eighth Circuit in *Lenz v. Yellow Transportation, Inc.*—to assist in determining who constitutes a "transportation worker." 431 F.3d 348, 352 (8th Cir. 2005); *see generally W. Dairy Transp.*, 457 S.W.3d at 465. Appellants apply this test in their brief, but the Fifth Circuit recently and explicitly rejected the adoption of the *Lenz* test in *Eastus*. *Eastus*, 960 F.3d at 211. We also decline to adopt such a test and instead choose to adhere to the general requirement that the worker must actually engage in the movement of goods in interstate commerce. *See id.*; *see also Circuit City Stores*, 532 U.S. at 119.

Regardless of whether the Arbitration Agreement is in fact an "employment contract,"[1] or whether "waste" constitutes a "good," we hold that Sherman is not a transportation worker exempted by 9 U.S.C. § 1. To be considered a transportation worker, one must actually engage in the *interstate movement of goods*. *See Circuit City Stores*, 532 U.S. at 119; *see also Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 497 (7th Cir. 2021) ("To resolve that question we ask 'whether the interstate movement of goods is a central part of the class members' job description,' meaning that the workers are actively occupied in 'the enterprise of moving goods across interstate lines.'" (quoting *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801–02 (7th Cir. 2020))); *Eastus*, 960 F.3d at 211 (in holding that an airline worker who checked passengers' tickets as they boarded the plane is not a "transportation worker," the court noted that "[i]mportant to us is that though the passengers [—i.e., the goods ] moved in interstate commerce, Eastus' role preceded that movement"); *Siller v. L & F Distribs., Ltd.*, No. 96-40549, 1997 WL 114907, at *1 (5th Cir. Feb. 18, 1997) (unpublished) ("[A] 'carrier is engaged in interstate commerce when transporting goods either originating in transit from beyond Texas or ultimately bound for destinations beyond Texas, even though the route of a particular carrier is wholly within one state.'" (quoting *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976))). Here, the record contains no evidence that the waste which Sherman transported was ever moved across state lines or was ever bound for a destination outside of Texas. The record fails to create a fact issue that Sherman is an exempted "transportation worker" under 9 U.S.C. § 1.

Appellees assert that the Arbitration Agreement itself supports a finding that Sherman is a transportation worker. The Arbitration Agreement states, "[t]he parties

---

[1]At the hearing on Appellants' motion to compel arbitration, Appellants argued that an arbitration agreement is not necessarily an "employment contract" to which 9 U.S.C. § 1 applies. Regardless of whether or not the agreement here is actually an employment contract, Appellants appear to have abandoned this argument on appeal. Therefore, on the issue of the applicability of the FAA, we assume, without deciding, that the Arbitration Agreement is an "employment contract" under 9 U.S.C. § 1.

agree and understand that Employer and / or Benefit Staffing are engaged in transactions involving interstate commerce and that, while performing duties during the course of employment, Employee is engaged in activity that affects interstate commerce." However, as we discussed above, *Circuit City* expressly distinguished being "engaged *in* commerce" from activity merely "affecting commerce" or "involving commerce." *See Circuit City*, 532 U.S. at 118 (emphasis added). While the FAA more broadly applies to any activity affecting or involving interstate commerce, the more narrowly construed transportation-worker exemption requires that the worker actually be engaged in the interstate movement of goods. *See id.*; 9 U.S.C. §§ 1, 2. The Arbitration Agreement stated that the parties were involved in activity "that *affects* interstate commerce," which comports with their expressed intent to be governed by the FAA. The Arbitration Agreement does not similarly state that Appellant was engaged in the interstate movement of goods, and there is no evidence in the record to that effect.

Without any evidence that Sherman was actually engaged in the movement of goods in interstate commerce, the "transportation worker" exemption does not apply, and the FAA governs.

### 2. No Waiver of Appeal

We next address Appellees' contention that Appellants have "waived their appeal." Specifically, Appellees contend that Appellants waived their appeal by failing to properly challenge the trial court's implied findings and by failing to challenge all grounds upon which the trial court's order could have been based. We disagree.

Appellees correctly note that when no findings of fact or conclusions of law are requested or filed, we must imply all findings of fact that are necessary to support the trial court's judgment and are supported by the evidence. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Wichita Cty. v. Envtl. Eng'g &*

7

*Geotechnics, Inc.*, 576 S.W.3d 851, 861 (Tex. App.—Austin 2019, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). However, a presumption exists against waiver of a right to arbitration. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). As in *Marshall*, "[t]he record before us in this case does not overcome that presumption. Instead, the record indicates that [Appellants] consistently and timely sought to invoke any contractual rights to arbitration they might have." *Id.* Further, it is well settled that when the appellate record includes both the reporter's and clerk's records, as it does here, the trial court's implied findings of fact are not conclusive and may be challenged in this court for legal sufficiency. *See Sibley*, 111 S.W.3d at 52; *Wichita Cty.*, 576 S.W.3d at 861.

Appellees assert that Appellants have waived their right to appeal because they did not specifically provide issue statements as to each implied finding and that "[i]t does not matter whether Knox and Martinez argued in the body of their brief various arguments." However, Appellees cite to no authority, and we have found none, which requires that we must disregard the substance of Appellants' arguments simply because they were not prefaced by an issue statement. To the contrary, Texas courts liberally construe the issues listed on appeal to achieve a just, fair, and equitable adjudication of the litigants' rights. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982).

Appellees also contend that, because Appellants "have not challenged via argument the implied findings that the Texas Arbitration Act specifically excludes claims for personal injury/workers' compensation," Appellants have not challenged implied findings on a theory that could support the trial court's order; Appellees suggest that we should summarily affirm the trial court's order on the basis of this unassigned error. Appellants clearly and specifically address this issue in their brief,

stating that "[t]he Arbitration Agreement's plain language provides the FAA governs the agreement pursuant to *Employer's and Benefit Staffing's* involvement in interstate commerce, making any argument stemming from the Texas Arbitration Act preempted." For these reasons, we conclude that Appellants have not "waived their appeal."

### 3. Sherman's Claim that he did not Sign the Arbitration Agreement

With regard to Appellees' claim that Sherman did not sign the Arbitration Agreement and that Appellees were therefore not bound by it, several issues arise including the effect and enforceability of an electronic signature. Appellants argue, among other things, that Sherman's affidavit is insufficient to create a fact question. We agree.

### a. Affidavits Denying Electronic Signature — Aerotek

In addressing Sherman's affidavit and related issues as to whether Appellees are or should be bound by the Arbitration Agreement, we note that the Texas Supreme Court in *Aerotek, Inc. v. Boyd* recently addressed similar facts and issues. 624 S.W.3d 199 (Tex. 2021). There, an employer filed a motion to compel arbitration against its employees, contending that the employees were bound to arbitrate their dispute pursuant to signed arbitration agreements between the employer and its employees. *Id.* at 200–02. The employees responded with affidavits denying that the employees "had ever seen, signed, or been presented with the [arbitration agreement]." *Id.* at 202.

The employer in *Aerotek* offered evidence of a signed arbitration agreement between the employer and its employees, its hiring and application process, and evidence that established the efficacy of its security procedures for the electronic signatures placed on the documents. *Id.* at 203–06. The employer utilized multiple security procedures; importantly, the evidence showed that each employee was required to enter personal information known only to the employee during the

9

application process and was later required to input a secure passcode, which was known only to the employee, to log into the program and electronically sign the documents. *Id.* at 204–06. The employer provided a way in which, if the applicant desired, he could input his information at Aerotek rather than from home. The application program also recorded and timestamped the employee's actions. *Id.* at 206. The application could not be submitted until all the steps were completed and all signatures were provided. *Id.* A candidate who claimed lack of ability to use a computerized hiring application was invited to Aerotek's office for assistance.

The Texas Supreme Court held that the employer's evidence conclusively established that the employees signed and agreed to the terms of the arbitration agreement; it also held that the employer's evidence demonstrating the security procedures surrounding the signature authentication program conclusively proved its reliability such that the signatures on the agreement could be attributed to the employee pursuant to the Texas Uniform Electronic Transactions Act (the Act). *See id.* at 200, 205–07, 209 (citing TEX. BUS. & COM. CODE ANN. §§ 322.001–.009).

### b. Standard of Review

We apply an abuse of discretion standard of review to the trial court's order. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Id.*

To compel arbitration, a party must prove that a valid arbitration agreement exists. *Aerotek*, 624 S.W.3d at 204. Whether an arbitration agreement is valid and enforceable is a legal question subject to de novo review. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227–28). In addressing this legal question, however, we must defer to the trial court's implied factual finding that Sherman did not sign the Arbitration Agreement

10

if such a finding is "supported by evidence." *See Aerotek*, 624 S.W.3d at 204 (quoting *Henry*, 551 S.W.3d at 115).

### c. Sherman: Electronic Signature

In addition to a copy of the signed Arbitration Agreement, Appellants offered two affidavits in support of its validity—one from Matt Knox, Knox's vice-president, and one from Shelia Clark, the custodian of records for Benefit Staffing. These affidavits confirmed that it was routine practice to send employees to Benefit Staffing after their interview with Knox so that they could read, sign, and complete the necessary introductory documents—which included the Arbitration Agreement—prior to beginning work. Clark testified in her affidavit that these documents are forwarded directly to the new employee's personal e-mail, unless the employee either does not have a personal e-mail or chooses not to use it, in which case an e-mail address specific to Knox is used to receive and sign the documents. Clark further stated that only after the new employee has signed all the required blanks within the document collection can the documents then be submitted to Benefit Staffing for completion. The affidavits also state that Sherman was sent to Benefit Staffing after his interview with Matt Knox, where he completed all of the required documents under the supervision and assistance of King. Clark stated that Sherman chose not to use his own e-mail address and the documents were sent to "applicant2018@gmail.com" to be completed.

Appellants also provided evidence of the application and documentation process, a copy of all of Sherman's signed and completed documents, the signature authentication program, and the metadata from the signature authentication certificate, which provided detailed timestamps and records of Sherman's completion of the documents. The pages of the subject documents were numbered beginning with "Page 1 of 10," and so on, with the Arbitration Agreement labeled as "Page 7 of 10," "Page 8 of 10," "Page 9 of 10," and "Page 10 of 10," respectively.

Many of the documents that Sherman was required to sign—both before and after the Arbitration Agreement—also included personal identifying information that could only have been known to Sherman at the time they were signed, such as his Social Security number, driver's license number, bank account and routing number, and other identifying information.

Appellees contend that Appellants failed to produce any evidence of a valid Arbitration Agreement because Appellants' two affidavits were not made on personal knowledge and are otherwise insufficient to support a finding that a valid Arbitration Agreement exists. We disagree.

We first note that it is inconsequential that neither Matt Knox nor Clark personally observed Sherman sign the Arbitration Agreement. Faced with a similar argument in *Aerotek*—"[t]he Employees argue[d] that no evidence supports a finding that they signed the MAAs because Marsh did not 'observe' them doing so"—the court held that "Marsh did not need to observe them because the hiring application did, invisibly storing in a database an electronic record of each action the Employees took." *Aerotek*, 624 S.W.3d at 207. Applying this reasoning to the instant case, neither Matt Knox nor Clark needed to personally observe Sherman signing the Arbitration Agreement because the hiring application did. *See id.* Regardless, Appellants' affidavits would, at minimum, be admissible to establish their routine practice of having new employees sign an arbitration agreement and would be admissible to support the reliability and security of their electronic signature authentication program. *See generally id.*; *see also In re Copart, Inc.*, 619 S.W.3d 710, 716 (Tex. 2021) (per curiam) (holding "such knowledge [of the affiant] has no bearing on [the affiant's] status as a witness qualified to verify the authenticity of the various documents attached to her declaration"); *In re Astro Air, L.P.*, No. 12-10-00108-CV, 2010 WL 3582657, at *3 (Tex. App.—Tyler Sept. 15, 2010, pet. denied) (mem. op.).

Even so, Appellees assert that Appellants' affidavits are not conclusive evidence of a valid arbitration agreement nor of any actual assent to be bound by the Arbitration Agreement.  In support of this contention, Appellees liken the facts of the instant case to those of *Astro Air*.  There, our sister court determined that evidence demonstrating the routine practice of entering into arbitration agreements with new employees is "not only admissible, but also strong and persuasive that [the employee] was notified of the arbitration agreement and that she signed the arbitration agreement."  *Astro Air*, 2010 WL 3582657, at *4.  However, the court determined that such evidence was not conclusive because the movant was unable to provide the trial court with any actual arbitration agreement signed by the employee. *See id.*

The case before us is readily distinguishable from *Astro Air*.  Here, not only did Appellants provide evidence of a routine practice, which is "strong and persuasive" evidence that Sherman was notified of and signed the Arbitration Agreement, Appellants also provided an Arbitration Agreement purportedly signed by the parties, as well as metadata showing all of Sherman's actions beginning when King created the documents for Sherman to read and sign.  For the reasons discussed above, we conclude that Appellants presented sufficient evidence of a valid arbitration agreement such that a reasonable factfinder could not have disregarded it in determining whether a valid arbitration agreement exists, at least as it pertains to Appellant Knox.  *See Aerotek*, 624 S.W.3d at 204–07; *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Freudensprung*, 379 F.3d at 341.

> ### d. Sherman's Consent by Electronic Signature Denied by Affidavit

In support of their position that Sherman never agreed to be bound by the Arbitration Agreement, Appellees provided only a single, self-interested affidavit

from Sherman in which he stated that he never signed, nor was ever asked to sign, the Arbitration Agreement. Appellants contend that Sherman's affidavit was not fully clear or credible[2] and that Appellees failed to produce more than a scintilla of evidence raising a genuine issue of material fact. As relevant to this appeal, Sherman's affidavit states:

> "I am Plaintiff in the above-referenced matter. I met with Knox Waste Services and was offered a position on March 1, 2019.

> "During the employment interview I was not provided or shown any paperwork or asked to sign anything that had an arbitration provision in it.

> "No one, including Knox Waste Services, provided me with a copy of the Arbitration Agreement at any time during my employment. I did not see that document until after I was injured.

> "I did not sign the document alleged to be the Arbitration Agreement either on a computer or in my own handwriting nor did I give any person permission to sign on my behalf.

> "I have an email address that I could have used to sign electronic documents, if I had been asked to do so.

Generally, an interested witness's affidavit must be clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily controvertible. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997) (citing *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986)). "'Could have been readily controverted' does not mean that the summary

---

[2]We note that Appellants also assert that Sherman's affidavit does not comply with the evidentiary rules governing affidavits and is therefore inadmissible. Specifically, Appellants contend that because the jurat within Sherman's affidavit states that "Landon Northcutt" personally appeared before the notary, the affidavit does not adequately state that Sherman was properly sworn. We decline to discuss whether Sherman's affidavit complies with the requisite evidentiary rules, as Appellants did not object to the admissibility of Sherman's affidavit before the trial court; therefore, Appellants have waived this argument on appeal. *See* TEX. R. CIV. P. 166a(f) (defects to the form of an affidavit must be objected to or else waived on appeal); *ACI Design Build Contractors Inc. v. Loadholt*, 605 S.W.3d 515, 518 (Tex. App.—Austin 2020, pet. denied) (citing *Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 317 (Tex. 2012)) (holding that defects in a jurat concerning whether the affidavit was properly sworn to are defects in form).

judgment evidence could have been easily and conveniently rebutted, but rather indicates that the testimony could have been effectively countered by opposing evidence." *Id.* (citing *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)).

Regarding his first statement, it is undisputed that Sherman met with Knox and was hired on March 1, 2019. This statement fails to controvert anything.

In his second statement, Sherman only contends that he was not provided or shown any paperwork or asked to sign anything that contained an arbitration provision during the employment interview. However, Sherman was not presented any of the documents to sign until he was sent to Benefit Staffing after his employment interview with Matt Knox that morning. Therefore, this statement also fails to clearly and directly controvert a material issue.

Concerning Sherman's third statement, Sherman merely asserts that no one provided him with a copy of the Arbitration Agreement at any time and that he did not see it until after he was injured. However, this fails to clearly and directly controvert anything as well because the mere failure to be provided a copy of the Arbitration Agreement does not establish that the Arbitration Agreement was not included in the original set of electronic documents that he signed at Benefit Staffing, nor does it prove that he did not agree to be bound by arbitration. Additionally, a mere assertion that he did not see or read the document is insufficient to establish that he did not receive notice of it. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms.").

Sherman's fifth assertion states that he had an e-mail address that he could have used to sign electronic documents, had he been asked to do so. Similarly here, the statement fails to actually controvert a material issue because Sherman does not affirmatively state that he was not asked to use his personal e-mail address and does

15

not affirmatively state that he was not given the opportunity to use his personal e-mail address to complete the documents. Moreover, Clark stated in her affidavit that the new employee receives the introductory documents directly to their personal e-mail by default, unless the employee does not have a personal e-mail or chooses not to use it. Therefore, at no point would Sherman have ever been asked to use his personal e-mail, as it was his choice to make from the beginning. Therefore, it is immaterial that Sherman "had an email address" that he could have used.

The only statement that could be fairly argued as clearly, positively, and directly controverting anything is Sherman's fourth assertion stating that he did not sign the document alleged to be the Arbitration Agreement and did not authorize anyone to sign it on his behalf. However, a mere denial by the nonmovant that he did not sign the agreement, without more, fails to create a genuine issue of material fact. *See Aerotek*, 624 S.W.3d at 208–09. According to *Tipps*, "[i]f the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). Some courts have since construed this rule to mean that a party opposing a motion to compel arbitration sufficiently raises a genuine issue of material fact merely by filing an affidavit that denies that party ever signed the agreement. *See, e.g.*, *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied). The Texas Supreme Court's recent decision in *Aerotek*, however, directly addresses the adequacy of this type of evidence without more being shown. *See generally Aerotek*, 624 S.W.3d 199.

As we have discussed, the court in *Aerotek* concluded that the employer had produced clear evidence of a reliable and secure electronic signature procedure such that the signature found on the alleged agreement between the employer and employee could be attributed to the employee. *Id.* at 207, 209. In contrast, the

employees offered affidavits that merely denied that the employee ever signed any arbitration agreement. *See id.* at 206–07. Based on the record, the court in *Aerotek* held that the trial court erred in denying the employer's motion to compel arbitration. *Id.* at 210. The court in *Aerotek* concluded that such affidavits were nothing more than mere arguments that the employees did not sign the agreements, and "[b]ecause arguments are not evidence, no evidence supports the Employees' contentions." *Id.* at 208 (footnote omitted). When faced with evidence conclusively demonstrating the reliability of the authentication procedures for electronic signatures, "[m]ere denials do not suffice" to create a genuine issue of material fact. *Id.* at 209. "An opposing party may, of course, offer evidence that security procedures lack integrity or effectiveness and therefore cannot reliably be used to connect a computer record to a particular person. But that attribution cannot be cast into doubt merely by denying the result that reliable procedures generate." *Id.* at 210.

Generally, if a party opposing the motion to compel arbitration denies the existence of an agreement, the court shall summarily determine that issue. CIV. PRAC. & REM. § 171.021(b) (West 2019); *see Tipps*, 842 S.W.2d at 269. *Aerotek* expressly holds, as a matter of law, that an affidavit merely denying the fact of whether a party signed the agreement is no evidence of the arbitration agreement's invalidity. 624 S.W.3d at 208–09. Whether at a summary hearing to determine a motion to compel arbitration or at an evidentiary hearing, no evidence is no evidence. *See id.*

Importantly, *Aerotek* noted *Ward v. Weaver*'s holding that a sworn denial "that neither she nor anyone authorized to act on her behalf had ever signed the deed" created a material fact issue. *Id.* at 208 n.39 (quoting *Ward v. Weaver*, 34 S.W.2d 1093 (Tex. Comm'n App. 1931, judgm't affirmed)). "Whatever *Ward*'s continued validity is today, it does not control here." *Id.* at 208. Accordingly, an affidavit controverting evidence tending to establish a valid agreement to arbitrate must

provide more than mere denials in order to raise a genuine dispute of material fact. *See id.* at 207–09. Otherwise, such an affidavit amounts to no evidence. *See id.* at 208.

Applying *Aerotek* to the instant case, the statements contained in Sherman's affidavit constitute mere arguments and do not create a genuine issue of material fact. *See id.* With no affirmative defense pled and no evidence of fraud or lack of reliability of Knox's application security procedures creating a genuine dispute of material fact, no evidentiary hearing was warranted and the trial court was left with no other option than to compel arbitration. *See id.* at 209–10; *Tipps*, 842 S.W.2d at 269; *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 445 (N.D. Tex. 2019) ("Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002))). For the same reasons, the trial court could not have implicitly found that Sherman did not sign the agreement, and Sherman's affidavit did not constitute evidence that could support the trial court's denial of Appellant Knox's motion to compel arbitration. *See Aerotek*, 624 S.W.3d at 204.

It would be contrary to good policy to hold that the efficacy of an electronic signature's validation could be cast into doubt by a person's mere denial that he signed the agreement, particularly in light of such weighty evidence to the contrary and without any affirmative demonstration of actual fraud. Just as *Aerotek* comments,

> As Texans continue to move online, the pace of innovation and change in everyday life continues to accelerate. . . . Although "applying old doctrines" to [online] interactions "is rarely straightforward", it would be even less so if the electronic contracts governing them—terms of use

18

or service, in many cases—were unnecessarily invalidated. When it comes to access to justice, the courts today are likewise heavily dependent on electronic signatures. . . . Our policymaking branch of government, the Legislature, has expressly declared it to be the policy of this State to facilitate [electronic] transactions. Courts cannot unnecessarily stand in the way of the Legislature's attempts to keep pace with that innovation.

*Id.* at 209–10 (footnotes omitted). We likewise decline to stand in the way of the legislature's attempt to keep pace with that innovation. We therefore conclude that the trial court abused its discretion in denying Appellant Knox's motion to compel arbitration.

*e. This Arbitration Agreement Does Not Bind Nonsignatories*

The parties also dispute whether Appellant Martinez may enforce the Arbitration Agreement. Appellants contend that because Appellees did not separate their claims against each defendant, they "closely intertwine claims asserted against Appellant Knox, a signatory to the arbitration agreement, with their claims against Appellant Martinez." Furthermore, Appellants contend that "[b]y asserting Appellant Knox is liable [under respondeat superior] for the actions of Appellant Martinez, Appellees create an interest for Appellant Knox to defend any alleged claims against Appellant Martinez." Appellees contend, however, that Sherman never made any agreement with Martinez to arbitrate such disputes that they may have between them and that, therefore, Martinez cannot seek to compel arbitration pursuant to the Arbitration Agreement at issue here.

"Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005)). As such, courts apply state contract law. *See id.* (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d, 732 738 (Tex. 2005)). The involvement of a

19

nonsignatory is an important legal issue to be weighed here because a party cannot generally be forced to arbitrate absent a binding agreement to do so. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018). We review the resolution of this question de novo. *Id.* at 629.

Generally, an obligation to arbitrate not only attaches to the parties who have personally signed the agreement, but may also bind nonsignatories under principles of contract law and agency. *See id.*; *Rubiola*, 334 S.W.3d at 224. While "'[a]rbitration agreements apply to nonsignatories only in rare circumstances[,]' the question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *Rubiola*, 334 S.W.3d at 224 (alterations in original) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355, 358 (5th Cir. 2003)); *see also Jody James Farms*, 547 S.W.3d at 633; *In re Golden Peanut Co., LLC*, 298 S.W.3d 629 (Tex. 2009) (nonsignatory wife, children, and heirs bound to resolve wrongful death claims by arbitration pursuant to the arbitration agreement executed by decedent employee and employer). Absent an express intent to include certain nonsignatories as parties, courts have also articulated six scenarios in which nonsignatories may compel arbitration: "(1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Jody James Farms*, 547 S.W.3d at 633 (citing *Kellogg Brown & Root*, 166 S.W.3d at 739).

As written, the terms of the Arbitration Agreement do not include nonsignatories. Furthermore, Appellants do not contend that any one of the above scenarios is specifically applicable. Rather, Appellants rely solely upon another scenario, which the Texas Supreme Court has neither explicitly adopted nor rejected: the "intertwined claims theory," also known as the "alternative estoppel theory." *See Jody James Farms*, 547 S.W.3d at 639–40. Under this theory, "non-signatories can successfully compel arbitration when (1) they have a 'close relationship' with a

20

signatory to a contract with an arbitration agreement and (2) the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 639 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). In order for this theory to apply, however, "'the obligation to arbitrate depends on consent'; alternative estoppel requires not only a dispute intertwined with the contract but also a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration." *Id.* (quoting *Sokol Holdings, Inc. v. BMB Muani, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)).

Here, although the claims against both Appellants are virtually identical, they sound in tort law and are not contractual in nature. Because the dispute is not closely intertwined with the underlying contract, Appellants have failed to show the applicability of an alternative estoppel theory. *See id.* Without establishing that some theory applies that would permit Appellant Martinez, a nonsignatory, to enforce the Arbitration Agreement, we conclude that the trial court did not abuse its discretion in denying Appellants' motion to compel arbitration as it pertains to Appellant Martinez.

Our decision to permit Appellees to proceed separately in a common law claim against Martinez, in his individual capacity, does not require risking inconsistent findings on issues of liability regarding the same accident or the uneconomic use of judicial resources. During the hearing before the trial court, Appellants specifically requested a stay of the remaining trial court proceedings while the matter is in arbitration; further, Sections 171.021(c) and 171.025 of the Texas Civil Practice and Remedies Code may require it. The FAA requires courts to stay litigation of issues that are subject to arbitration. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (citing 9 U.S.C. § 3). While the mandatory stay references parties to the arbitration agreement, a nonsignatory party's claims may also be subject to the mandatory stay. *See id.* "We note the Texas Supreme

Court has commented on a stay being appropriate to prevent 'a non-signatory affiliate [from] simultaneously conduct[ing] discovery and chip[ping] away at the same issues in litigation.'" *HEB Grocery Co. L.P. v. Del Cid*, No. 04-19-00058-CV, 2019 WL 3432087, at *3 n.2 (Tex. App.—San Antonio July 31, 2019, no pet.) (mem. op.) (alterations in original) (quoting *In re Merrill Lynch & Co.*, 315 S.W.3d 888, 892 (Tex. 2010)).

### 4. Construction: Nonsubscriber Claims are not Excluded from Arbitration

As we stated above, both federal and Texas policy strongly favor arbitration. *See Henry*, 551 S.W.3d at 115. Thus, once the party seeking enforcement establishes that a valid arbitration agreement exists between the parties, a presumption arises in favor of arbitration that the disputed claims fall within the scope of the agreement. *See id.*; *Rojas*, 87 F.3d at 749 (citing *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527–28 (5th Cir.1983)). The presumption in favor of arbitration "is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Marshall*, 909 S.W.2d at 899 (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson*, 128 S.W.3d at 229. "As with any deed or contract, our task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020) (citing *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 117–18 (Tex. 2018)). "When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (citing *Forbau v. Aetna Life Ins. Co.*, 876

22

S.W.2d 132, 133 (Tex. 1994)). Words must be construed "in the context in which they are used." *Id.* (quoting *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018)). Equally important, we avoid construing contracts in a way that renders contract language meaningless. *Id.* (citing *Piranha Partners*, 596 S.W.3d at 747. Whether the agreement is ambiguous is a question of law that we decide de novo. *URI*, 543 S.W.3d at 763. "[W]e look not for the parties' actual intent but for their intent as expressed in the written document. We consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Piranha Partners*, 596 S.W.3d at 744 (footnote and citation omitted).

We note at the outset that the Arbitration Agreement is not the epitome of clarity. For example, the capitalization of defined terms is not used uniformly; some phrases appear to be cut and pasted from another source; and certain punctuation is missing. However, the Arbitration Agreement appears to be a form-agreement used by all of Knox's employees. The provisions of the Arbitration Agreement can be harmonized and given a definite or certain legal meaning, and therefore it is not ambiguous. *See id.* Given the presumption in favor of arbitration, the unambiguous Arbitration Agreement before us can be reasonably interpreted to cover the dispute at issue here.

Section B of the Arbitration Agreement states in relevant part:

B. **CLAIMS COVERED BY AGREEMENT**

Except as excluded by Section C below, this Agreement applies to . . . (4) all tort Claims, including negligence, negligence per se, or gross negligence (including Claims for personal or bodily injury, whether or not sustained on the job) . . . .

This portion of Section B appears to be a fairly comprehensive incorporation of claims for personal and bodily injury that could be asserted against the employer, including nonsubscriber suits, "[e]xcept as excluded by Section C below."

23

In light of the stated exception, we examine Section C, which states in relevant part:

C. **CLAIMS NOT COVERED BY AGREEMENT**

Excluded from this agreement are (1) administrative claims by employee for unemployment compensation benefits and for workers' compensation or occupational accident benefits (except that this Agreement does not apply to claims for job-related injuries against an entity that is not Employee's Employer and to Claims for an injury to or the death of employee that are not covered by Workers' Compensation . . . .

In reference to the exceptions to claims that are subject to arbitration under Section C, Appellees argue that the phrase "and to Claims for an injury to or the death of employee that are not covered by Workers' Compensation" refers to nonsubscriber claims against the employer and that, therefore, Appellees are entitled to maintain their common law nonsubscriber suit against Appellants. With their nonsubscriber claims, Appellees unambiguously asserted claims for negligence; negligence per se; gross negligence; and violations of certain laws, statutes, regulations, or ordinances.

In consideration of Appellees' interpretation, we may not ignore that a presumption in favor of arbitration exists, and we may not disregard Section B of the Arbitration Agreement; rather, we must harmonize it if we can "and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson*, 128 S.W.3d at 229. Under Appellees' narrow interpretation, the language in Section B that expressly includes "all tort Claims, including negligence, negligence per se, or gross negligence (including Claims for personal or bodily injury, whether or not sustained on the job)" would be rendered meaningless because there would be no personal injury claims of the employee left that Knox could arbitrate; as a nonsubscriber, all on-the-job personal injury claims that an employee

24

may have against Knox would necessarily be a claim for injury to or death of an employee that is not covered by workers' compensation.

Appellees' interpretation also fails to consider the context in which this particular exclusionary language is written. The language upon which Appellees rely is notated within an introductory parenthetical (although there is no closing parenthesis), which is stated only as an exception to the exclusion of administrative claims under Section C(1). As written, the parenthetical language is intended to modify what administrative claims may be excluded. Thus the "claims" referred to by the parenthetical language, when harmonized with the full contextual language chosen by the parties, excludes, in addition to the three specified administrative claims for injury, any other "administrative claims" that are not covered by workers' compensation. Further, defined claims that are not covered (1) include claims against those other than the employer, and (2) a distinction is made between "claims for *job-related injuries*" and "[c]laims for *an injury* . . . not covered by Workers' Compensation"[3] (emphasis added). The phrase within Section C(1) upon which Appellees rely in their common law nonsubscriber personal injury claim against the employer is not only restricted to administrative claims but also to claims against nonemployers, or for injury that is not defined as "job-related."

Accordingly, Section C(1) cannot be reasonably interpreted to be an exception to Section B. Appellees' nonsubscriber claims against Knox therefore squarely fall into Section B's list of claims that must be arbitrated—from which Section C gives no exception. Given our de novo construction of the contract and the presumption in favor of arbitration, it could not be found by the trial court "*with positive assurance*" that the Arbitration Agreement "is *not* susceptible of an interpretation

---

[3]A bodily injury that is not "job-related" is typically not a covered claim by workers' compensation insurance. There is a myriad of fact situations where *claims for an injury or death* may not be covered by workers' compensation including but not limited to intentional torts. *Mo-Vac Service Company, Inc. v. Escobedo*, 603 S.W.3d 119 (Tex. 2020).

which would cover the dispute at issue." *Marshall*, 909 S.W.2d at 899 (quoting *Neal*, 918 F.2d at 37). The trial court, therefore, abused its discretion in finding otherwise.

For these reasons, we conclude that Appellants provided conclusive evidence demonstrating that a valid arbitration agreement exists between the parties and that, as a matter of law, Appellees' claims fall within its scope. To the extent the trial court denied Appellants' motion to compel arbitration because it determined that Appellants failed to meet their burden, the trial court erred.

*B. Defenses to Enforcement*

As a defense to enforcement, Appellees contend that Appellants waived their right to compel arbitration because they failed to comply with a mediation requirement within the Arbitration Agreement. As relevant here, the Arbitration Agreement states: "**E.**     **MEDIATION AS PRECONDITION TO ARBITRATION**[:] Before arbitrating any Claim timely made under this Agreement, the Parties will attempt in good faith to resolve the Claim by mediation . . . ." Appellees specifically contend that because Appellants did not seek mediation before filing their motion to compel, Appellants failed to comply with the terms of the Arbitration Agreement and therefore cannot compel arbitration.

Generally, "a trial court cannot compel arbitration when the provision [permitting arbitration] requires the parties to mediate before arbitration." *See Rodriguez v. Tex. Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 430 (Tex. App.— Houston [14th Dist.] 2019, pet. denied) (quoting *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). "However, even when the agreement requires the parties to mediate before arbitration, a party who proceeds first to litigation waives the right to mediation and cannot assert the mediation provision as a condition precedent to arbitration." *Id.* (citing *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 146–47 (Tex. App.—Waco 2010, no pet.)). Here,

26

Appellees first proceeded to litigation when they filed their petition without first pursuing mediation. Accordingly, Appellees waived their right to complain of mediation as a precondition to arbitration. *See id.*

Appellees also contend that one possible basis upon which the trial court could have based its judgment was that Appellants failed to establish that Sherman "knowingly and voluntarily" waived his right to a jury trial. However, a conspicuous jury waiver provision is "prima facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it." *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (per curiam). Here, the Arbitration Agreement conspicuously noted that the parties "**agree to resolve all Claims . . . exclusively through mediation and arbitration, rather than through a jury trial, under the terms of this Agreement.**"

### C. Evidentiary Hearing

Both Appellants and Appellees contend that the others' evidence was insufficient to raise a genuine dispute of material fact as to the Arbitration Agreement's validity and that the trial court was therefore required to summarily determine the issue. Additionally, both sides contend that, in the alternative, their own evidence at least raised a genuine dispute of material fact. The parties' position on appeal is that, in the alternative, the matter should be remanded to the trial court for an evidentiary hearing.

Even if we assume that this issue was preserved, and assuming without holding that the trial court did not abuse its discretion in refusing to strike Appellees' response and affidavit, we have already held above that the affidavit of Sherman was not sufficient to create a fact question. Therefore, no evidentiary hearing is required under these circumstances. Because Appellees failed to produce evidence to raise a genuine issue of material fact, no evidentiary hearing was required, and the trial court had no other alternative than to compel arbitration. *See Aerotek*, 624 S.W.3d at 206–

10; *Jebbia*, 26 S.W.3d at 757; *see also Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246–47 (Tex. App.—San Antonio 2006, no pet.).

### D. Timeliness of Response

Appellants also contend that the trial court erred in considering Appellees' response—which included Sherman's affidavit—because it was filed the evening before the hearing on the motion to compel arbitration and was thus untimely. Appellants preserved their objection by obtaining an oral ruling from the trial court and then a written order from the trial court overruling the objection. Because we hold that the trial court should have compelled arbitration, we need not address this issue.

### III. This Court's Ruling

We affirm the judgment of the trial court as it pertains to Appellant Martinez. We reverse the judgment of the trial court as it pertains to Appellant Knox, and we remand the cause with instructions to compel arbitration between Knox and Appellees.

W. BRUCE WILLIAMS
JUSTICE

September 30, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.